

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

WAYNE ORUILLE NORTON,

    Plaintiff,

v.                          Case No.: 2:11cv400

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

The plaintiff, Wayne Norton ("Norton"), brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), by order of reference filed September 21, 2011. For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be VACATED and the case be REMANDED for further proceedings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Norton was born on May 18, 1965. R. 207.[1] He is a high school graduate. R. 218. At the time of alleged disability onset on May 12, 2007, Norton was 41 years old and employed as a heavy equipment operator. R. 211-12. His date last insured was September 30, 2009, R. 197, meaning that he needed to establish that he became disabled on or before that date in order to be eligible for DIB. 42 U.S.C. § 423(a)(1)(A), (C); 20 C.F.R. §§ 404.101, 404.120, 404.315(a).

### A. Back Pain

On May 12, 2007, Norton experienced onset of pain in his lower back and left sciatic symptoms after mounting his motorcycle and lifting both feet into place. R. 624. He subsequently had difficulty walking and continued to experience severe pain in his lower back and left leg. He underwent two surgeries to correct a herniated disc in his lumbar spine on August 6, 2007, and December 12, 2007, respectively. He continued to experience significant back and sciatic pain in his left leg subsequent to these surgeries, which was treated with physical therapy, pain medication, and epidural injections. R. 878. No diagnostic testing has confirmed the source of the pain, but his treating osteopathic surgeon hypothesized that it may be epidural fibrosis (scar tissue) at the surgical site or residual chronic radiculopathy. R. 623. MRIs have confirmed disc desiccation in his lumbar spine, and his treating

---

[1] "R." refers to the administrative record in this case.

physician diagnosed him with degenerative disc disease in the lumbar spine in the fall of 2008. R. 858.

## B. Right Knee Pain

In September 2008, Norton sought treatment for right knee pain and associated functional limitations, including standing, walking, bending, squatting, kneeling, and climbing stairs. His orthopedist diagnosed him with a lateral meniscus tear and recommended imaging. R. 663. An MRI performed on Norton's right knee on October 9, 2008, revealed multiple bony infarcts throughout the distal lateral femoral condyle. R. 664. Norton's orthopedist found the MRI consistent with osteochondritis dissecans, a joint disorder caused by loss of blood to the subchondral bone that results in avascular necrosis (bone death), and early arthritis. He received injections and prescription medication for the pain and was counseled on the possibility of future surgery to prevent further collapse of his knee. R. 664.

On January 29, 2009, Norton underwent right knee core decompression. R. 897. In March 2009, Norton reported that he continued to experience right knee pain; however radiographs of the knee revealed well-maintained joint spaces and no evidence of collapse. R. 897-98. He agreed to undergo knee arthroscopy and repeat core decompression. These procedures were performed on September 14, 2009. R. 895-96. During the arthroscopy, Norton's surgeon noted a medial meniscal tear and debrided it. R. 896.

### C. **Right Hip Pain**

On October 28, 2008, Norton's treating physician evaluated and treated him for right hip and knee pain and associated ambulation difficulties. An MRI conducted in November 2008 of Norton's right hip showed avascular necrosis. R. 657. On January 29, 2009, Norton underwent right hip resurfacing, which was indicated to prevent right hip replacement. R. 679. Post-surgery, Norton reported decreased hip pain and his physician noted increased range of motion. R. 897.

### D. **Other Impairments**

Norton fractured his right heel in 2004, which was noted as the likely cause of the avascular necrosis in his right knee and hip. R. 669. He also has a history of hypertension and depression, for which he has been treated with prescription medication. R. 651-52. He has not received any mental health treatment other than through his primary care provider. R. 98. The record also reveals that he suffered an umbilical hernia in the 1990s. R. 95, 906.

### E. **Application for Benefits**

Norton filed concurrent applications for DIB and SSI on August 6, 2007, prior to any surgical interventions. His initial application alleged disability due to back problems, high blood pressure, hernias, and an old ankle injury. R. 212. The Social

-4-

Security Administration ("SSA") initially denied his claims on October 26, 2007, and after reconsideration on March 25, 2008. R. 118.

Norton timely requested a hearing before an Administrative Law Judge ("ALJ") of the SSA, and one was held via videoconference on September 22, 2009,[2] roughly one week after his second knee surgery. At the hearing, Norton was represented by counsel and testified as to the severity of his impairments. R. 79-111. Vocational expert ("VE") Ellen C. Jenkins also testified. R. 111-13.

On November 16, 2009, the ALJ issued a decision finding Norton not disabled under the Social Security Act. R. 28-45. Norton timely appealed the ALJ's decision to the Appeals Council of the SSA. With his appeal, he submitted evidence obtained subsequent to the ALJ's decision purporting to pertain to his impairments at the time of the hearing. R. 892-919. Upon consideration of this evidence, the Appeals Council determined that it had no reason to review the ALJ's decision and denied Norton's request for review on June 1, 2011. R. 1. This action made the ALJ's decision the final decision of the Commissioner, subject to judicial review in this Court pursuant to 42 U.S.C. § 405(g). 20 C.F.R. §§ 404.981, 416.1481.

---

[2] A hearing was initially held on April 13, 2009, but it was continued to allow Norton an opportunity to retain counsel. R. 74-77.

Norton timely filed the instant complaint seeking review and reversal of the Commissioner's decision denying his claims for DIB and SSI on July 14, 2011. ECF No. 1. The Commissioner timely filed an Answer on September 19, 2011. ECF No. 6. On October 12, 2011, Norton filed a Motion for Summary Judgment or in the Alternative, Motion for Remand, and a supporting memorandum. ECF Nos. 10-12. On November 23, 2011, the Commissioner filed a cross-motion for summary judgment and supporting memorandum. ECF Nos. 13-14. Norton filed a reply brief on December 7, 2011. ECF No. 15. At this time, the case is fully briefed. Because neither party has indicated special circumstances requiring oral argument, the Court's findings and recommendations are based on the motion papers and memoranda. See Local Civil Rule 7(J).

## II.  DISABILITY DETERMINATION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

[3] A "medically determinable physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. § 423(d)(1)(a). To meet this definition, the claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.[4] 20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. § 423(d)(2)(A).

## A. **Five-Step Sequential Analysis**

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. See 20 C.F.R. §§ 404.1520 and 416.920. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). This analysis requires the ALJ to determine, in sequence:

(1)     Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working). If so, the claimant is not disabled and the inquiry is halted.

(2)     Whether the claimant has a severe impairment.[5] If not, then the claimant is not disabled and the inquiry is halted.

---

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.
[5] A severe impairment must be medically determinable and must, on its own or in combination with other physical or mental impairments, significantly limit a claimant's ability to engage in basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c).

(3)   Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria.  If so, the claimant is disabled and the inquiry is halted.

(4)   Whether the impairment prevents the claimant from performing past relevant work.  If not, the claimant is not disabled and the inquiry is halted.

(5)   Whether the claimant is able to perform any other work considering both his residual functional capacity and vocational profile. If so, the claimant is not disabled.

Before proceeding to step four, the ALJ must determine the claimant's residual functional capacity ("RFC")—that is, the most the claimant can do in a work setting despite the physical and mental limitations of his impairments and any related symptoms, e.g., pain. See 20 C.F.R. §§ 404.1520(a)(4) 404.1545(a)(1). Prior to step five, the burden of proving disability rests on the claimant. Bowen v. Yuckert, 482 U.S. 137, 148 n.5 (1987); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If the ALJ determines, based on the claimant's RFC, that he is not able to perform past relevant work, the burden shifts to the Commissioner to show that jobs exist in significant numbers in the national economy that the claimant could perform in light of his RFC, age, education, and past work

experience. <u>Wilson v. Califano</u>, 617 F.2d 1050, 1053 (4th Cir. 1980).

### 1.    Steps One Through Three

As a preliminary matter, the ALJ found that Norton's date last insured ("DLI") was September 30, 2009. R. 30.

At step one of the sequential analysis, the ALJ found that Norton had not engaged in any substantial gainful activity since May 12, 2007, the alleged disability onset date. R. 30.

At step two, the ALJ found that Norton had the following severe impairments: lumbar degenerative disc disease, lumbar radiculopathy, status post hip preserving surgery on the right hip secondary to avascular necrosis, and status post decompression surgery on the right knee secondary to avascular necrosis. R. 31. She concluded that Norton's hypertension, hernia, and depression were not severe impairments. R. 34. In so finding, the ALJ reviewed the notes of Drs. Weis, Figard, Greco, Millet, Butkovich, Petrera, Hoshino, and King, who treated or examined Norton at various periods from August 2007 through June 2009.

At step three, the ALJ determined that Norton did not have an impairment or combination of impairments that met or was medically equal to a listed impairment. R. 36-37.

### 2. RFC Determination

Prior to step four, the ALJ found that Norton retained the RFC to perform simple, unskilled sedentary work that only occasionally

required him to climb ramps and stairs, stoop, kneel, crouch, and crawl and that never required him to climb ladders, ropes, and scaffolds, or to perform work that involved concentrated exposure to hazards. R. 37. The ALJ specifically found that Norton could lift ten pounds occasionally, less than 10 pounds frequently, stand or walk for two hours in an eight hour day, and sit for six hours in an eight hour day.[6] These latter findings correlate to the minimum physical exertion required of a person capable of performing the full range of sedentary work. See 20 C.F.R. § 404.1567(a); Soc. Sec. Ruling 96-9P, 1996 WL 374185, at *3, *6 (July 12, 1996).

In so finding, the ALJ determined that the record did not support Norton's testimony about the intensity, persistence, and functionally limiting effects of his pain and credited Norton's testimony only to the extent that it was consistent with the RFC determination.

The ALJ also reviewed the treatment and examination notes of Drs. Weis, Figard, King, and Mont, Norton's treating physicians, and the opinions of Drs. Longa and Staehr, non-examining, non-treating medical consultants who reviewed portions of Norton's medical history when his application was pending before the state Disability Determination Service ("DDS"). The ALJ assigned little

---

[6] The regulations contemplate a break every two hours. Soc. Sec. Ruling 96-9P, 1996 WL 374185, at *6 (July 12, 1996).

weight to the opinions of Norton's treating physicians and some weight to select opinions of Drs. Longa and Staehr. R. 42-43.

### 3. Steps Four and Five

At step four, the ALJ examined the VE concerning the skill and exertional level of Norton's former employment. R. 43. The VE testified that Norton's past jobs as a truck mechanic, diesel mechanic, and heavy equipment operator were skilled positions that required medium to heavy exertion. R. 112. Based on this testimony, the ALJ determined that Norton's RFC prevented him from returning to past relevant work.

At step five, the ALJ considered Norton's age at onset of disability, education, whether Norton had acquired transferable skills from past work, and his RFC. She found that Norton's postural limitations[7] prevented him from performing the full range of sedentary work. Accordingly, the ALJ examined the VE as to whether an individual with Norton's age, education, work experience and RFC could successfully adjust to jobs existing in significant numbers in the national economy. The VE responded that someone with those characteristics retained the ability to perform work as a credit clerk, information clerk, or order clerk, and that these positions existed in significant numbers in the national and local economies. R. 44. Based on this testimony and the framework

---

[7] Postural limitations are "restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling." Soc. Sec. Ruling 96-9P, 1996 WL 374185.

prescribed in the Medical-Vocational Guidelines,[8] the ALJ found that Norton was not disabled under the Social Security Act. R. 45.

## B. **New and Material Evidence**

The Secretary's regulations permit a claimant who is dissatisfied with the ALJ's decision to appeal the decision to the Appeals Council and submit additional evidence with the appeal. See 20 C.F.R. §§ 404.968, 404.970(b). In determining whether to grant review of the ALJ's decision, the Appeals Council must consider the evidence submitted if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93 (4th Cir. 1991) (quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)); see 20 C.F.R. § 404.970. Evidence is new "if it is not duplicative or cumulative" and material if there is "a reasonable possibility that the new evidence would have changed the outcome." Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011). Evidence relates to the period on or before the date of the ALJ's decision if it provides evidence of a plaintiff's impairments at the time of the decision. See Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005).

---

[8] The Medical Vocational Guidelines are located in Appendix 2 of 20 C.F.R. Part P, Subpart 404. The Guidelines "categorize a claimant's exertional limitations, age, education, and past work experience to determine disability." Campbell v. Apfel, No. 97-2128, 1998 WL 911740, at *2 (4th Cir. Dec. 31, 1998).

The evidence that Norton submitted to the Appeals Council consists of a letter and completed Multiple Impairment Questionnaire from Dr. James Schwartz, M.D., who examined Norton and reviewed his medical records on April 13, 2010. Based on his observations and knowledge of Norton's medical history, Dr. Schwartz diagnosed Norton with lumbar degenerative disc disease with residual left L5 radiculopathy manifested by motor weakness; avascular necrosis, right medial femoral condyle (knee) with collapse of the posterior portion of the weight bearing surface; avascular necrosis post hip resurfacing procedure; and chronic right heel pain, secondary to os calcis (heel bone) fracture. R. 908. With respect to Norton's functional limitations, Dr. Schwartz noted that Norton could sustain a reasonable walking pace for a significant distance or over rough and uneven surfaces due to the use of a cane in his left hand and a brace on his right knee. R. 908-09. His ambulation was further limited by weakness about his left ankle. R. 908. Standing was limited by pain and swelling in his right knee. R. 908. Dr. Schwartz concluded that Norton could not sit for more than an hour because of the degenerative disc in his back. R. 908.  He needed assistance to get his shoe and sock off his right foot. R. 908. Upon consideration of the additional evidence, the Appeals Council determined that it had no reason to review the ALJ's decision and denied Norton's request for review on June 1, 2011. R. 1.

-13-

### III. ASSIGNMENTS OF ERROR

Norton argues that the Court should reverse the Commissioner's decision and remand for determination of benefits or, in the alternative, remand his claims for a new hearing because: 1) the ALJ failed to assign appropriate weight to the opinions of Norton's treating physicians, 2) the ALJ failed to properly evaluate the credibility of Norton's testimony, 3) the ALJ improperly relied upon the flawed testimony of the VE, and 4) the Appeals Council failed to consider the evidence that Norton submitted with his appeal. The first two errors challenge the basis of the ALJ's RFC determination. The third attacks the ALJ's finding at step five that Norton could perform jobs that exist in significant numbers in the national economy. The fourth challenges the Appeals Council's summary treatment of the evidence Norton submitted with his appeal.

### IV. STANDARD OF REVIEW

Where the Appeals Council denies review of an ALJ's decision, the decision of the ALJ becomes the final decision of the Commissioner. See Wilkins, 953 F.2d at 96; 20 C.F.R. § 404.955. The Court reviews final decisions of the Commissioner to determine whether they are supported by substantial evidence in the administrative record and based on the correct application of the law.  42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)

-14-

("[A] factual finding by an [ALJ] . . . is not binding if it was reached by means of an improper standard or misapplication of law."). Even where the ALJ's decision is the effective subject of judicial review, the Court must examine the entire administrative record, including any new evidence that the Appeals Council incorporated, to determine whether substantial evidence supports the Commissioner's findings. See Meyer, 662 F.3d at 704 (quoting Wilkins, 953 F.2d at 96).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter, 993 F.2d at 34 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). The Commissioner has the duty to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1456 (citing King v. Califano, 599 F.2d 497, 599 (4th Cir. 1979)). "Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. The Court must nevertheless "give careful scrutiny to the whole record to assure that there is a solid foundation for the [Commissioner's] findings and that his conclusion is rational." Viteck v. Finch, 438 F.2d 1157, 1157-58

(4th Cir. 1971). When the fact finder fails to assess the probative value of competing evidence or articulate the bases for conclusions, meaningful review cannot be accomplished. See Meyer, 662 F.3d at 707; DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

## V.    ANALYSIS

### A. Evidence Submitted to the Appeals Council

Because the disposition of Norton's final assignment of error—that the Appeals Council failed to consider the evidence submitted with Norton's appeal—bears on the remainder of the Court's analysis, the Court addresses it first. At the outset, it is worth noting that the Appeals Council did, in fact, consider the new evidence that Norton submitted with his appeal. R. 1. It simply found "no reason under our rules to review the Administrative Law Judge's decision." R. 1. Accordingly, Norton's assignment of error is misplaced. Norton also challenges the fact that the Appeals Council failed to explain its reasoning for denying review. Pl.'s Supp. Br. at 23, ECF No. 12 at 23. Again, the Court FINDS this argument without merit.

In Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011), the Fourth Circuit recently explained the administrative appeals process when an ALJ has issued a decision denying benefits. A claimant must first request review from the Appeals Council, which may deny or grant the request. Id. at 704 (quoting 20 C.F.R. § 404.967). If the

Appeals Council grants the request for review, it may issue its own decision or remand the case for review by an ALJ. Id. When the request for review contains additional evidence, the Appeals Council must first determine whether the evidence is new and material and whether it relates to the period on or before the date of the ALJ's decision. Id. at 704-05.

> Confronted with such new and material evidence, the Appeals Council then evaluate[s] the entire record including the new and material evidence. After this evaluation, if the Appeals Council finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record, it will grant the request for review and either issue its own decision on the merits or remand the case to the ALJ. But if upon consideration of all of the evidence, including any new and material evidence, the Appeals Council finds the ALJ's action, findings, or conclusions not contrary to the weight of the evidence, the Appeals Council can simply deny the request for review.

Id. at 705 (citations omitted) (internal quotation marks omitted) (citing 20 C.F.R. §§ 404.967, 404.970(b), 404.977(a), 404.979). A denial of a request for review does not constitute a "final decision" of the Commissioner subject to judicial review, and therefore, the Appeals Council is not required to articulate its rationale for denying the request. Id.; see 42 U.S.C. § 405(g).

In the instant case, the Appeals Council denied Norton's request for review. The Notice of Appeals Council Action ("Notice") explains: "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this

information does not provide a basis for changing the Administrative Law Judge's decision." R. 2. The Order of Appeals Council lists an Examination Report and Multiple Impairment Questionnaire from Dr. Schwartz as exhibits. R. 4.

The Notice makes clear that the Appeals Council considered the medical evidence from Dr. Schwartz. It follows that the Appeals Council found this evidence to be new and material evidence related to the period on or before the ALJ issued her decision. See Meyer, F.3d at 704-05; 20 C.F.R. § 404.970. Its conclusion that "this information does not provide a basis for changing the [ALJ's] decision" simply amounts to a finding that the new evidence did not sufficiently alter the weight of the record evidence to warrant review of the ALJ's decision.[9] See R. 1; see also Meyer, F.3d at 704-05; 20 C.F.R. § 404.970. Accordingly, in light of Meyer, the Court FINDS that the Appeals Council did all that it was required to do upon receiving additional evidence of Norton's impairments and that it was not obligated to further explain or justify its

---

[9] The parties did not have the benefit of Meyer in formulating their arguments because it was not decided until after briefing in this case closed. Accordingly, their arguments focus on whether the additional evidence submitted was new and material. In light of Meyer, and because the Appeals Council incorporated the additional evidence into the administrative record, the focus of the Court's inquiry is not whether the evidence is new and material, but whether substantial evidence and adequate reasoning support the Commissioner's decision, when the Court considers the record, including the additional evidence, as a whole. See Meyer, 662 F.3d at 707.

-18-

denial of Norton's request for review. See Meyer, 662 F.3d at 705-06.

Nevertheless, the Court must "'review the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record'" in determining whether to uphold the Commissioner's denial of benefits. Meyer, 662 F.3d at 704 (quoting Wilkins, 953 F.2d at 96)). Accordingly, the fact that the Appeals Council incorporated the evidence from Dr. Schwartz into the administrative record affects the Court's analysis of whether substantial evidence supports the ALJ's factual findings.

### B. RFC Determination

The ALJ determined that Norton retained the RFC to perform a limited range of unskilled sedentary work. In reaching this conclusion, the ALJ discredited Norton's statements at hearing concerning the limitations caused by his back pain to the extent that they were inconsistent with the finding that he could sit for six hours in a day. The ALJ also assigned little weight to the opinions of Norton's treating physicians concerning the limiting effects of his pain. Norton contests both findings. Because weighing opinion evidence and making credibility determinations are components of the RFC analysis, the Court reviews these assignments of error in the context of the ALJ's overall RFC determination.

-19-

The RFC determination requires consideration of all relevant evidence in a claimant's case record and the limiting effects of all his impairments, even those that are not severe. 20 C.F.R. § 404.1545(a), (e). The regulations recognize that "[p]ain or other symptoms may cause limitation of function beyond that which can be determined on the basis of anatomical, physiological, or psychological abnormalities alone. . . ." Id. at § 404.1545(e). Accordingly, the fact finder must consider both objective medical evidence as well as evidence of "what may precipitate or aggravate [a claimant's] symptoms, what medications, treatments or other methods [a claimant] use[s] to alleviate them, and how the symptoms may affect [a claimant's] pattern of daily living" in determining the functional limitations caused by pain. 20 C.F.R. 404.1529(c). Although the ALJ need not address every piece of evidence in the record, an ALJ must articulate the bases for her findings and may not "cherry-pick" evidence that supports a preordained RFC determination. See Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010); McCain v. Astrue, No. 4:11CV69, 2012 WL 928504, at *7 (E.D. Va. Feb. 22, 2012).

Having reviewed the entire record, the Court FINDS that substantial evidence does not support the ALJ's finding that Norton is capable of sitting for six hours in an eight hour day. Because the unskilled sedentary occupational base will be eroded if an individual is unable to sit for a total of six hours in an eight

hour day or is required to regularly alternate between sitting and standing,[10] Soc. Sec. Ruling 96-9P, 1996 WL 374185, at *6-7, the Court RECOMMENDS remanding the case for further proceedings.

### 1. Evidence before the ALJ

#### i.   Clinical Evidence

On August 14, 2007, Norton underwent a left L4-5 lumbar micro-discectomy to remove a disc fragment. R. 31, 502-503. An MRI in December 2007 revealed a recurrent herniated disc on the left at L4-5. R. 605. Norton underwent a redo micro-discectomy and root decompression on December 19, 2007. R. 31, 620-21. On March 6, 2008, Norton was examined by his treating orthopedic surgeon Dr. Weis, who had performed the micro-discectomies. Norton complained of pain in his left buttock that radiated down his leg. He rated his back pain as 6.5 and his leg pain as four on a ten point scale. R. 31, 635. The pain prevented Norton from lifting heavy weights, but he could manage light to medium weights if they were positioned in front of him. R. 31, 636. At the time, Dr. Weis noted that Norton's most recent MRI revealed only minimal desiccation of the L4-5 disc, and that he did not see a problem with Norton's spine that would explain his ongoing symptoms. R. 623. He nevertheless stated that he could not rule out epidural fibrosis or residual chronic radiculopathy. R. 32, 623. He noted that Norton's spine was

---

[10] The occupational base is the total number of unskilled jobs available in each exertional category. See 20 C.F.R. Pt. 404, Subpt. P, App. 2.

stable and that he was approved for activity as tolerated. R. 32, 623. Dr. Millet also examined Norton on March 6, 2008. Dr. Millet observed that Norton could heel-toe walk on the left but not on the right because of a previous injury and that he demonstrated fair lumbar forward flexion without clear reproduction or worsening of symptoms. R. 31, 625. Norton's strength testing in all muscle groups was full, and he did not have tender or trigger points on his lumbar spine. R. 32, 625. Dr. Millet noted that straight leg raises reproduced pain in Norton's left buttock and hamstring. R. 625. Dr. Millet diagnosed Norton with "chronic radiculitis, but, without any clear neural compressive lesions on his MRIs." R. 625. During this time, Norton was prescribed Neurontin, Lyrica, and Ultram for pain. R. 626.

Norton reported continued pain in his lumbar spine and new pain in his upper extremities due to arthritis to Dr. Butkovich, a treating orthopedist, on October 14, 2008. R. 32, 664. On October 28, 2008, Norton began seeing a new family doctor, Dr. King. He complained of pain from his lumbar radiculopathy, and Dr. King prescribed Neurontin. R. 32, 889. An MRI performed on October 30, 2008, confirmed some disc desiccation at the L4-5 level in Norton's lumbar spine. R. 657. On December 15, 2008, Dr. Petrera of Peninsula Orthopaedic Associates, P.A., examined Norton and noted that his back was non-tender. In April 2009, Dr. King referred Norton for a membership at the YMCA so that he could do exercises

to alleviate his symptoms associated with chronic arthritis. R. 32, 670. In May 2009, Dr. King noted that she had diagnosed Norton with degenerative arthritis of the spine with radiculopathy. R. 858. On June 1, 2009, Norton reported to Dr. King that he experienced increased sciatic pain after stopping Neurontin, so he had resumed the medication. R. 32, 882.

### ii. Norton's Testimony

At hearing, Norton testified that his back pain was his biggest problem on a daily basis. R. 90. He described the pain as constant and located just above his belt, explaining that it radiates down his left leg to his toes when it is particularly bad. R. 90. He rated his pain as a four or five out of ten when medicated but stated that he "can't even walk" when he does not take his medication. R. 93. Norton testified that he spent the majority of his time in a reclined position at home. He stated that he could sit for ten to fifteen minutes in an upright position before his back started bothering him, but that he could sit for a couple of hours in his recliner because he is able to stretch out and move around. R. 100. He also testified that he used to go to church regularly, but that he can no longer sit through a service. R. 105. On his drive to the hearing, which took just over one hour, Norton had to stop three times due back pain. R. 107. The hearing, during which Norton was "holding himself up in his chair," lasted fifty minutes. R. 101.

### iii. Opinion Evidence

On March 6, 2008, Dr. Weis cleared Norton for activity as tolerated and referred Norton to Dr. Millet for evaluation of his vocational abilities. R. 623. Dr. Millet noted functional limitations, but did not make any specific findings. R. 625. Dr. King began treating Norton in October 2008 and completed a Welfare Medical Evaluation for the Virginia Department of Social Services on November 17, 2008. In it, she noted that Norton was unable to sit for more than one hour at a time due to back pain. On May 22, 2009, Dr. King completed a Multiple Impairment Questionnaire. R. 858-865. She stated that Norton's diagnosis was avascular necrosis of the right femoral head, infarctions of the right knee, degenerative arthritis of the lumbar spine with radiculopathy, and hypertension made worse by pain. R. 858. She noted that his prognosis was "fair," explaining that he had already had two back surgeries. R. 858. She also noted that he experienced constant pain in his lumbar spine and that he exhibited pain upon rotation of his trunk when she examined him on May 7, 2009. R. 858. Based on this evidence, she determined that Norton could sit for no more than one hour in any given day. R. 860. She also expressed the opinion that, in light of Norton's other impairments and limitations, he could not work in a competitive environment. R. 864, 891.

Dr. Longa, a state DDS consultant, completed a physical RFC assessment of Norton on October 25, 2007, prior to Norton's second

back surgery. Based on the medical evidence before her at the time, she concluded that Norton was capable of standing for six hours in an eight hour day and sitting for six hours in an eight hour day. R. 427. She noted that Norton was still recovering from his first back surgery, but that his impairment was not expected to last longer than twelve months. 431. Dr. Staehr completed a second RFC assessment on March 25, 2008, roughly three months after Norton underwent his second back surgery. Dr. Staehr noted that during an exam on March 6, 2008, Norton reported continued back and sciatic pain but that Dr. Weis had not identified a significant problem in the spine to explain Norton's symptoms. R. 648. Dr. Staehr concluded that Norton was capable of performing light work activity, including both standing and sitting for six hours in an eight hour day. R. 643. Neither Dr. Longa nor Staehr examined or treated Norton, and neither reviewed medical documentation concerning his back impairments subsequent to March 2008.

## 2. Weight Assigned to Opinion Evidence

With respect to the finding that Norton could sit for six hours in an eight hour day, the ALJ gave "some weight" to the opinions of Drs. Longa and Staehr. She gave little weight to Dr. King's opinion, and discredited Norton's testimony to the extent that it contradicted the finding that he could sit for six hours.

Generally, the opinion of a claimant's treating physician is entitled to controlling weight if it is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Where an ALJ determines that the opinion of a treating physician is not entitled to controlling weight, the ALJ must examine all the medical opinion evidence in the record and assign weight to such opinions based on the following factors: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; (5) the treating physician's specialization; and (6) other factors, such as the source's familiarity with the SSA's disability programs and other evidence in the claimant's case record. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Evidence from non-examining state DDS consultants is considered opinion evidence, meaning that an ALJ's decision must explain the weight accorded to such evidence with reference to these factors. 20 C.F.R. § 404.1527(f)(2)(ii). As with all findings in a disability decision, a logical nexus must exist between the weight accorded to opinion evidence and the record, and the reasons for assigning such weight must be "sufficiently articulated to permit meaningful judicial review." DeLoatche, 715 F.2d at 150; see Blakes ex rel. Wolfe v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003); Young v. Astrue, 771 F. Supp. 2d 610, 619 (S.D.W. Va. 2011).

In the instant case, the ALJ not only failed to sufficiently explain her reasoning for attributing less than controlling weight to Dr. King's opinion that Norton was capable of sitting for no more than one hour, but she also failed to explain her decision for giving greater weight to the opinions of Drs. Longa and Staehr.

Dr. King was Norton's treating physician during the year immediately preceding the ALJ's decision. R. 890. She saw Norton every two to three months, R. 890, and her treatment and examination notes reveal that she worked with Norton to manage his pain by referring him for physical therapy, referring him to medical specialists, and prescribing pain medication. R. 874-890. She also observed Norton experiencing pain upon rotation of his spine. R. 858. The record contains numerous opinions from Dr. King concerning Norton's functional limitations. Dr. King specifically expressed her opinion that Norton was incapable of sitting for more than an hour in the Welfare Medical Evaluation that she completed for the Virginia Department of Social Services in November 2008 and in the Multiple Impairment Questionnaire that she completed in May 2009. R. 659, 860.

"[W]hen a physician offers specific restrictions or limitations . . . the ALJ must provide reasons for accepting or rejecting such opinions." Timmer v. Astrue, No. 3:10CV639, 2011 WL 4589998, at *4 (E.D. Va. Sept. 7, 2011). The ALJ failed in this task. She addressed Dr. King's opinions in summary fashion, finding

them "inconsistent with the record," without referencing a single opinion or piece of evidence with which it was inconsistent. R. 42. She further noted that Dr. King's conclusion that Norton was unable to work was an administrative finding reserved to the Commissioner and that Dr. King's opinions were not binding on the Commissioner because they were made in conjunction with a State agency. R. 42. It is true that a treating physician's finding that a claimant is disabled is not entitled to any special significance, see 20 C.F.R. § 404.1527(d), but the ALJ's accurate recitation of the law in this instance does not make up for the fact that she failed to similarly articulate reasons for dismissing Dr. King's other opinions. It is also true that another agency's determination that a claimant is disabled is not binding on the Commissioner. See 20 C.F.R. §§ 404.1504. However, the federal regulations do not permit an ALJ to discredit medical opinion evidence about a claimant's functional limitations merely because it is expressed on a form used by another agency in determining disability status. See id. Such a rule would arbitrarily and unnecessarily handicap a claimant's ability to present medical evidence of his condition.

It may be the case that none of Dr. King's opinions are entitled to controlling or even substantial weight. Indeed, it appears that her assessment that Norton is unable to lift anything and is significantly limited in his ability to use his hands and arms for reaching, grasping, and fine manipulations lacks clinical

-28-

support. R. 664. On the other hand, the medical evidence in the record amply documents Norton's back impairments and resulting pain. Yet, the ALJ failed to assess this or any other evidence in discrediting Dr. King's opinions. This failure impedes the Court's effort to review the ALJ's determination that Dr. King's opinions were entitled to little weight. See DeLoatche, 715 F.2d at 150.

Had the ALJ cited substantial evidence in the record suggesting that Norton was capable of sitting for six hours, her failure to articulate reasons for disregarding the contrary opinion of Dr. King might be less pronounced. However, Dr. Longa and Staehr's opinions are the only evidence in the record that directly support this finding, and the ALJ provided no reasoning whatsoever for assigning weight to them. R. 42. Even where a treating physician's opinions are not entitled to controlling weight, they are generally entitled to more weight than that of a consultative physician. See 20 C.F.R. § 416.927(d)(1). In this instance, neither Dr. Longa nor Dr. Staehr ever examined or treated Norton, and their opinions are based on an incomplete picture of Norton's impairments and diagnoses. Specifically, the record documents that Norton received treatment for back pain and was diagnosed with degenerative disc disease subsequent to March 2008, but Dr. Long and Staehr's opinions do not account for this evidence. These considerations weigh against attributing weight to their opinion that Norton could sit for six out of eight hours under the factors

set forth in 20 C.F.R. § 416.927. Notably, the ALJ disregarded Dr. Longa and Staher's other opinions about Norton's limitations because they failed to consider his subjective complaints of pain. However, no explanation exists in the decision as to why the ALJ did not similarly disregard their opinions concerning Norton's sitting capacity. The internal inconsistency of this rationale begs justification, yet the Court can find none.

It is the exclusive province of the fact finder to weigh the evidence in the record; however, where the fact finder fails to articulate its reasoning or substantiate its findings, the findings cannot withstand judicial review. See DeLoatche, 715 F.2d at 150; Trimmer, 2011 WL 4589998, at *6 (remanding case because ALJ failed to sufficiently articulate findings and provide substantial evidence for rejecting the opinion of a treating physician). Because Drs. Longa and Staehr's opinions are the only evidence supporting the ALJ's determination that Norton was capable of sitting for six hours, and the ALJ has failed to sufficiently articulate a reason for crediting these opinions over the opinion of Dr. King, the Court cannot find that substantial evidence supports the finding that Norton is capable of sitting for six hours in an eight hour day.

### 3. Credibility of Norton's Testimony

It follows from the foregoing analysis that the ALJ's decision to credit Norton's testimony only to the extent that it comported

with the RFC determination is necessarily flawed. On remand, the ALJ is cautioned against making credibility determinations based on a predetermined RFC assessment. Moreover, although the ALJ need not accept Norton's allegations of pain to the extent they are inconsistent with objective evidence in the record, she may not discredit them solely because they are not substantiated by objective medical evidence. See Hines v. Barnhart, 453 F.3d 559, 565 & n.3 (4th Cir. 2006) (holding that claimant could rely on subjective evidence of disabling pain where objective evidence established the existence of an impairment that could reasonably be expected to cause the pain). Should the ALJ again make a negative credibility determination, she must specify the reasons for her decision and the evidence informing it. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985); Ivey v. Barnhart, 393 F. Supp. 2d 387, 389-90 (E.D.N.C. 2005).

#### 4. Evidence Before the Appeals Council

On April 13, 2010, Dr. Schwartz examined Norton and reviewed the medical evidence of his impairments. This evidence was not before the ALJ, but has been incorporated into the record by the Appeals Council. Dr. Schwartz observed that Norton could flex his fingertips below his knees, exhibited "fair reversal of his lumbar lordosis" and "dysrhythmic motion on return." R. 907. He noted moderate restriction of extension and a moderate amount of paravertebral muscle spasm bilaterally. R. 907. He further observed

percussion tenderness at the L4-5 level in both SI joint areas. R. 970. Dr. Schwartz diagnosed Norton with lumbar degenerative disc disease with residual left L5 radiculopathy manifested by motor weakness. R. 908.

In accordance with his clinical observations and review of Norton's medical records, Dr. Schwartz concluded that Norton could not sit for more than one hour at a time and no more than three hours in a day. R. 908, 913. He believed that Norton would need to get up and move around hourly for ten minutes at a time and that he would probably need to take unpredictable breaks in an eight hour day. R. 913-14, 916.

Dr. Schwartz's opinion concerning the functional limitations imposed by Norton's back pain contradicts the opinions of Drs. Longa and Staehr and comports with Norton's testimony and Dr. King's opinion. Dr. Schwartz's clinical observations also appear to lend support to Norton's complaints of functionally limiting pain. Assessing the weight of this evidence is "quintessentially the role of the fact finder." See Meyer, 662 F.3d at 707. To the extent that the Commissioner has not assessed the probative value of Dr. Schwartz's opinions and their impact on the RFC analysis, the Court's review of the Commissioner's RFC determination is frustrated. See id.; DeLoatche, 715 F.2d at 150. On remand, the Commissioner must arrive at an RFC determination upon consideration of Dr. Schwartz's opinions and the other record evidence in

accordance with the controlling regulations. <u>See</u> 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

## C. <u>Vocational Expert Testimony</u>

Norton argues that the ALJ's finding that he was capable of performing jobs that existed in significant numbers in the national economy was not supported by substantial evidence because it was based on the flawed testimony of the VE. This conclusion also follows from the Court's determination that substantial evidence does not support the ALJ's RFC assessment.

The ALJ based her conclusion that Norton was capable of successfully adjusting to other work based on the VE's testimony. R. 44. At hearing, the ALJ asked the VE whether a person of Norton's age and educational background who possessed the ability to perform at a sedentary exertional level with occasional postural limitations but who could never climb ladders, ropes, or scaffolds and needed to avoid exposure to extreme temperatures and hazards could perform any of Norton's past relevant work. R. 112-13. The VE responded in the negative but stated that such an individual could perform unskilled work as a credit clerk, information clerk, or order clerk, which are jobs that exist in significant numbers in the local and national economy. R. 113.

For a vocational expert's opinion "to be relevant or helpful, it must be . . . in response to proper hypothetical questions which fairly set out all of claimant's impairments." <u>Walker v. Bowen</u>, 889

-33-

F.2d 47, 50 (4th Cir. 1989) (citations omitted). Because the hypothetical that the ALJ posed to the VE was based on an unsubstantiated RFC assessment, it cannot constitute substantial evidence for the ALJ's finding that Norton could adjust to other work in the economy.[11] Accordingly, the Court finds the ALJ's conclusion that Norton could adjust to other work in the economy erroneous.

## VI. CONCLUSION AND RECOMMENDATIONS

Where the Commissioner fails to develop an accurate and logical nexus between the evidence in the record and the result, meaningful review cannot be accomplished. See DeLoatche, 715 F.2d at 150; Blakes ex rel. Wolfe, 331 F.3d at 569; Young, 771 F. Supp. 2d at 619. The Court FINDS that the ALJ failed to sufficiently articulate her reasoning for assigning greater weight to the opinions of Drs. Longa and Staehr than those of Dr. King, and as a consequence, the Court cannot conclude that substantial evidence supports the ALJ's RFC determination. Because the ALJ's RFC determination affected the credibility she assigned Norton's testimony and the conclusion that Norton could adjust to other work in the economy, these findings are also erroneous.

Although the Court is unable to conclude that substantial evidence supports the ALJ's decision that Norton is not disabled,

---

[11] Notably, the VE testified that if Norton was limited to the extent he claimed, he would not be able to adjust to other work in the economy. R. 114.

-34-

it is also unable to recommend an outright award of benefits. Accordingly, remand for rehearing pursuant to sentence four of 42 U.S.C. § 405(g) is the most judicious course. On remand, the Commissioner should consider the evidence presented to the Appeals Council as well as any other relevant evidence in the record and present, in reviewable form, an analysis of Norton's condition.

Based on the foregoing findings, the Court RECOMMENDS that Plaintiff's motion for summary judgment be GRANTED to the extent that it seeks remand for rehearing and DENIED to the extent that it seeks an award of benefits. ECF Nos. 10-11. It further RECOMMENDS that Defendant's motion for summary judgment be DENIED. ECF No. 13. Finally, the decision of the Commissioner should be VACATED and REMANDED for further administrative proceedings consistent with this report and recommendation.

## IV.  REVIEW PROCEDURE

By copy of this Report, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1):

1.  Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this Report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by

Rule 6(d) of said rules.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ.
P. 72(b)(2).

2.  A district judge shall make a de novo determination of
those portions of this Report or specified findings or
recommendations to which objection is made.  See 28 U.S.C.
§ 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The parties are further notified that failure to file timely
objections to the findings and recommendations set forth above will
result in a waiver of the right to appeal from a judgment of this
Court based on such findings and recommendations.  Thomas v. Arn,
474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984);
United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
June 21 , 2012